DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Rocky Starcher, appeals from a criminal conviction for rape, attempted rape, and gross sexual imposition resulting from a jury trial in the Medina County Court of Common Pleas. We affirm.
 I. {¶ 2} Rocky Starcher was the long-term, live-in boyfriend of Roselea Kaiser ("Kaiser"). Kaiser has several grandchildren, including Rosie Norton, Melissa Dove and Annie Harris.
 {¶ 3} On August 22, 2001, Rosie reported to the police that Starcher had sexually molested her. A grand jury subsequently indicted Starcher for rape in violation of R.C. 2907.02(A)(2), attempted rape in violation of R.C. 2923.02 and 2907.02(A)(2), and gross sexual imposition in violation of R.C. 2907.05(A)(1).
 {¶ 4} At trial, Rosie testified that she had been raised by her aunt when her biological mother was unable to care for her, and that Starcher and Kaiser had lived together for as long as Rosie could remember. Rosie further testified that on August 20, 2001, while she was living with her aunt, Rosie was home alone when Starcher came to her house around noon during his lunch break at work. Rosie alleged that she was taking a shower at the time, and Starcher walked into the house without knocking. Rosie claimed that it was not unusual for family members to do so, and so she thought nothing of the fact that Starcher had walked in. Rosie said that she wrapped a towel around herself and looked out to see who had arrived; when she did so, Starcher expressed a need to talk to her. Rosie claimed that she dressed in her dirty clothes and walked to her bedroom where she would put on clean clothes; when she did so, Starcher followed her into her bedroom and pushed his way inside. Rosie claimed that she asked him to leave the room; he refused and asked her to change in front of him. Rosie testified that Starcher began to remove her clothing against her protests and efforts to stop him; he then pushed her onto the bed and pulled down his own pants. Rosie claimed that Starcher held her down and penetrated her slightly, but at that point she was able to push him away. Rosie then said that Starcher left and Rosie told a neighbor what had occurred, but did not call the police because she was afraid of her grandmother's reaction.
 {¶ 5} Rosie then testified that two days later, on August 22, 2001, she was house sitting for her neighbors, Diana Artrip and Tara Wells, when Starcher arrived toward the evening and walked into the Artrip residence without knocking. Rosie claimed that she asked him to leave as she was getting ready to go out, but Starcher again expressed a need to speak with her. Rosie said that she went into the bathroom and Starcher followed her and assaulted her in the bathroom. Rosie claimed that this time he held her up against the door to the closet and performed oral sex upon her. Rosie pushed him away and into the sink. Rosie testified that there was a knock upon the door, Starcher turned white, and left the house. Rosie said that she also left the house, and went to a local market for a can of soda where she ran into a friend who wondered why Rosie was upset. Rosie said that she also told her sister, Kim Brown, who encouraged Rosie to tell her mother; it was her mother who encouraged her to call the police. On cross-examination, Rosie stated that directly after the assault on August 22, she took a bath, and although the police took her clothing as evidence, she did not seek medical treatment or testing.
 {¶ 6} According to Rosie, on the following weekend on either Friday or Saturday evening, she and Kim were planning on going out. Kim was in Rosie's truck in the driveway waiting for Rosie to exit the residence. Both Kim and Rosie testified that while Kim was waiting, Starcher again showed up, and went into the house. Kim testified that Rosie had asked her not to leave her alone with Starcher, so Kim proceeded to honk the horn and open and close the truck door as though she were going to go into the house. Kim and Rosie testified that after about five minutes, Kim went into the house. Kim said she saw Rocky holding Rosie against a wall and he had lipstick smeared over his face. Rosie testified that she had changed her clothes, put on some makeup, and was leaving the house when Starcher walked in, held her up against the wall, and started kissing her and feeling her breasts. Rosie said that while she was struggling with him, Kim entered the room, asked Starcher what he was doing, and, as a result, Starcher left. Rosie said that she did not report this incident to the police that day because she was expecting to hear from a Wadsworth Police Department detective soon.
 {¶ 7} Kim also testified that Rosie asked Kim to ensure that Rosie was not alone with Starcher, if Starcher should show up, because Rosie was afraid of him.
 {¶ 8} Lynn Kapolka, Rosie's landlord, testified that she saw Starcher at Rosie's house at lunchtime one summer day (she was not sure of the month) working on Rosie's truck and that he was doing the work alone. She testified that she saw him there again two days later and thought it was strange because Rosie and Starcher didn't have that much to do with each other, and at the time Kaiser was in West Virginia.
 {¶ 9} Tara Wells and Diane Artrip, Rosie's neighbors for whom she was house sitting, testified that before they left on their trip, the pedestal sink in the bathroom didn't leak; however, upon their return, the sink was wobbly and leaked to the extent that a bucket was put under it to catch the water. They both said that Rosie asked them to intervene if they saw Starcher going to Rosie's house so that she wouldn't be alone with him.
 {¶ 10} Melissa Dove ("Ms. Dove") testified that she is also a granddaughter of Kaiser, and while she was living with Kaiser for a few months when Ms. Dove was eighteen years old, Starcher sexually molested her. Ms. Dove stated that the first time was while she was doing dishes in the kitchen; Starcher put his arms around her and tried to feel her breasts. Ms. Dove testified that she tried to get away, but Starcher blocked the doorway. Ms. Dove said that later, when she was living elsewhere, Starcher went to her residence, pinned her to the wall, and attempted to insert his hand up her blouse and down her pants. Ms. Dove claimed that Starcher was successful to the point that his hand reached her pubic hairline. Ms. Dove testified that she, too, was afraid to pursue charges or tell anyone because Starcher threatened her. She testified that she did tell her grandmother, but her grandmother "blew me off." Ms. Dove said that her grandmother eventually pushed her granddaughters out of her life due to the accusations against Starcher.
 {¶ 11} A third granddaughter of Kaiser's, Annie Harris ("Ms. Harris"), testified that she lived with Kaiser when Ms. Harris was between the ages of eleven and thirteen because Kaiser had custody of her. Ms. Harris stated that, during the time she lived there, Starcher approached Ms. Harris as she was lying on the couch. Ms. Harris testified that Starcher tried to force his hand into her pants and got his hand as far as her pubic hair. She further claimed that on another occasion, Starcher pushed her against the wall, held her arms so that she couldn't move, and proceeded to kiss her up and down her neck. Ms. Harris said that she told her grandmother, her grandmother disbelieved her, and, as a result, Ms. Harris was removed from the home.
 {¶ 12} Two police officers testified, and reiterated the testimony above as it was related to them. The officers did not request a medical examination because Rosie had taken a bath prior to calling the police.
 {¶ 13} The defense witnesses included John Horner, an employee from the Swift Auto Parts store, who testified that he was asked to produce an original receipt from August 22, 2001, but was unable to locate it. Horner testified that a photocopy of the receipt, presented by the defense, was a copy of an invoice from the store, but that he didn't have specific recollection about the receipt. Horner further testified that it would take close to thirty minutes to replace a wheel cylinder on Rosie's truck, and that it is a two person job.
 {¶ 14} Bob Mullens, a friend of Starcher's, testified that around August 22, 2001, he helped Starcher one evening, after five o'clock, with replacing the brakes on Rosie's truck. Mullens claimed that Rosie was there, also and assisted them. Mullens stated that he was sure it was on a Friday night, although it was demonstrated that August 22, 2001, was a Wednesday.
 {¶ 15} Frank Uryga and Joseph Masturzo, Starcher's co-workers at the Wilbeth Road Bingo Hall, stated that Starcher worked with him on August 20, 2001, from 5 p.m. until 11 p.m. Both testified that they did not know what Starcher was doing at noon on that day.
 {¶ 16} Howard Curry, Starcher's supervisor at Kleen Polymers, testified that on Monday, August 20, 2001, Starcher clocked in at 5:51 a.m. and out at 4 p.m. and did not clock out that day for lunch; on August 21, 2001, Starcher clocked in at 5:51 a.m., out for lunch at 12:01 p.m., in again at 12:21 p.m., and out for the day at 4:30 p.m.; on August 22, 2001 Starcher clocked in at 5:51 a.m., out for lunch at 12:31 p.m., in again at 12:37 p.m. and out for the day at 6:00 p.m.; on August 23, 2001, Starcher clocked in at 5:51 a.m., out for lunch at 12:04 p.m., in again at 12:24 p.m., and out for the day at 4:00 p.m.; and on August 24, 2001, Starcher clocked in at 6:50 a.m. and out at 4:00 p.m. Curry stated that sometimes Starcher is working on the road and isn't able to clock out for lunch and Curry has no way of knowing what lunch arrangements Starcher makes on those days.
 {¶ 17} Carmen Long, owner of a store, testified to rebut a statement from Rosie. Rosie had testified that Rosie's mother was not home on August 20, 2001, because she was helping Ms. Long at the store. However, Ms. Long testified that August 20, 2001, was a Monday and the store has never been open on Mondays.
 {¶ 18} Ms. Long and Arley Taylor testified that on August 25, 2001, they were with Kaiser and Starcher attending a birthday dinner from 5:30 p.m. until 6:30 p.m., and afterwards the attendees went to Starcher's house until sometime after 7 p.m.
 {¶ 19} The jury returned guilty verdicts on all three counts. Starcher timely appealed raising three assignments of error.
 II. Assignment of Error No. 1
"The trial court erred in permitting the introduction of predjudicial (sic) evidence of other crimes, wrongs[,] or acts pursuant to Ohio rule of evidence 404(b) and O.R.C. § 2945.59."
 {¶ 20} In the first assignment of error, Starcher argues that the trial court permitted other acts testimony, specifically the testimony of Melissa Dove and Annie Harris. Ms. Dove, who, like Rosie, is a granddaughter of Kaiser, testified that Starcher used force in sexually molesting her. Ms. Harris, another granddaughter of Kaiser, testified likewise. Starcher contends that their testimony was unfairly prejudicial because it was unsubstantiated by other evidence. Further, Starcher argues that the trial court's pretrial ruling that the jury consider the testimony only as it related to the charges of rape and attempted rape "forced the jury to draw an impossibly fine distinction." We disagree.
 {¶ 21} A trial court has broad discretion to admit evidence, and an appellate court will not disturb a trial court's decision unless the trial court has abused its discretion and the defendant has been materially prejudiced. State v. Long (1978), 53 Ohio St.2d 91, 98. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).
"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." R.C.2945.59.
 {¶ 22} Evidence of prior criminal acts, which are wholly independent of the crime for which a defendant is on trial, is generally inadmissible. State v. Watkins, 9th Dist. No. 02CA008087, 2003-Ohio-1308, ¶ 7, citing State v. Thompson (1981),66 Ohio St.2d 496, 497; see, also, R.C. 2945.59.
 {¶ 23} Starcher claims that the testimony of the two women was prejudicial because it was unsubstantiated by other evidence. Corroboration is not required for admissibility. Further, on the record the trial court states that the testimony is admissible to show the use of force in sexual assaults of the past. The trial court does not say which exception of Evid.R. 404(B) is therefore applicable, however the testimony could well go to demonstrate scheme or system. As to the pretrial ruling, the jury was not present at the hearing and was not exposed to the court's determination; at trial there was no objection to the jury instructions which were ultimately used. Therefore, we find no abuse of discretion on the part of the trial court based upon Starcher's arguments in this assignment of error.
 {¶ 24} The first assignment of error is overruled.
Assignment of Error No. 2
"The trial court erred in allowing the prosecutor's improper statements during closing arguments."
 {¶ 25} In his second assignment of error, Starcher claims that in closing arguments the prosecutor "indicated to the jury that the defense had manufactured or adulterated evidence in this trial" referring specifically to a copy of a store receipt. Further, Starcher argues that the prosecutor misstated testimony and claimed that the defense attorney alluded to testimony that was not in evidence. Starcher states that these remarks resulted in a mistrial, and the trial court erred in denying the motion for a mistrial.
 {¶ 26} Closing arguments are not evidence. State v. Maurer (1984),15 Ohio St.3d 239, 269. Considerable latitude is permitted in closing arguments and the question of what is proper is left to the sound discretion of the trial court. Id. Where it is apparent from the particular facts and circumstances of the case that the discretion has not been abused, then a reviewing court may not interfere. Id.
 {¶ 27} The prosecutor made the following remarks in the rebuttal portion of his closing argument:
"[The defense attorney] said things, and characterized the evidence in his closing remarks that simply were not the evidence, simply were not said, and simply did not take place in this Courtroom, but if he says them to you, he hopes they will stick.
"One slight thing he says, for instances, is the witnesses said there was lipstick on [Starcher's] shirt.
"* * *
"Nobody said lipstick was on his shirt. He made that up, that wasn't the testimony.
"* * *
"Now, think about this, their witness they called from the Swift Auto Parts Store looked for this receipt and it didn't exist.
"You can think what you want about that, but for whatever reason, the fact is the original receipt at Swift Auto Parts did not exist.
"What you are given in State's Exhibit A (sic), I guess, is what appears to be a photocopy of some receipt, right, a photocopy.
"Now, where do you get a photocopy from?
"You get it from a receipt that exists somewhere, right, this had to exist in order for somebody to copy this.
"There was absolutely no testimony as to who made this copy, but if you are to believe this is a genuine receipt, then you have to believe that somebody somewhere that knows Rocky Starcher and/or [his counsel] has this original receipt because somebody made a copy of it.
"Where is it, and if you are able to make a copy of it, why isn't the original receipt brought in, whoever has it, this supposed receipt[?]
"They find this supposed copy. Are we to believe that Rocky Starcher keeps copies, or Sandy Norton keeps copies of receipts somewhere around her house, photocopies it and puts three holes in them[?]
"* * *
"Where is the original receipt, and who gave it to who to make a copy, and was there ever a date on that original, or was that date tampered with?
"There is an eight, there is three eights written on this.
"There is an eight right here, there is an eight on the date, and there is another eight written at $22.80.
"Notice the eight here, the eight here, and how they are the same, and how it is different from the eight made on the date."
"You will have that to review, and think, whether you think this means anything."
 {¶ 28} Prior to these remarks, during the defense's closing arguments, the following statements were made to the jury:
"I specifically asked her if she was wearing lipstick.
"* * *
"That is important to us, it is real important because that is in direct conflict with what Ms. Norton and Kim Brown said happened at the house just minutes before because they said there was lipstick smeared on Rocky Starcher's shirt.
"* * *
"As far as the car is concerned, the State will argue about that receipt, this isn't the receipt, and where did the original receipt go.
"We don't know where the original receipt went, we don't know where it is.
"I am assuming the original receipt is probably at Rose Norton's mother's house, that is where the original would be.
"What happened to the receipt at Swift Auto Parts? Sometimes they get misfiled.
"* * *
"[Mullens] remembers the event, and we know that that is true because [Rosie] confirmed that car was repaired on that day, and so do Mr. Mullens, and so does Mr. Horner [the clerk at Swift's Auto Parts] because he said that part was gotten from me on this date.
"`I don't remember who specifically got it, I may see 200 people a day.'"
 {¶ 29} Once the objection to the prosecutor's statements was entered, the court responded that there would be no mistrial, and it was the court's "recollection is he said it either came from your or your client." As a review of the transcript indicates, the defense attorney did indeed claim that Starcher's shirt had lipstick upon it, and the defense made much of the exculpatory nature of the photocopied receipt prior to the prosecutor's remarks to which Starcher objects. We find no abuse of discretion in overruling the motion for a mistrial based upon the prosecutor's statements in closing arguments. The second assignment of error is overruled.
Assignment of Error No. 3
"The verdict was against the manifest weight of the evidence."
 {¶ 30} In his final assignment of error, Starcher argues that no rational trier of fact could have found the essential elements of rape, attempted rape, and gross sexual imposition were proven beyond a reasonable doubt. Starcher argues that the testimony of Rosie and Ms. Dove were implausible in that, after being sexually assaulted, they continued "on with the day's activities as if nothing had happened . . ."; therefore, the verdict was against the manifest weight of the evidence.
 {¶ 31} "[A] manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 32} When an appellate court overturns a jury verdict on manifest weight of the evidence grounds, it is, in effect, acting as a "thirteenth juror" and is setting aside the resolution of evidence and testimony as found by the trier of fact. State v. Thompkins (1997), 78 Ohio St.3d 380,397. Accordingly, only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Otten, 33 Ohio App.3d at 340. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4.
 {¶ 33} The jury found Starcher guilty of rape, in violation of R.C. 2907.02(A)(2), which states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The jury also found him guilty of attempted rape in violation of R.C. 2923.02 which provides, in pertinent part, "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." Lastly the jury found Starcher guilty of gross sexual imposition in violation of R.C. 2907.05(A)(1) which reads, in relevant part:
"No person shall have sexual contact with another * * * when any of the following applies:
"(1) The offender purposely compels the other person, * * * to submit by force or threat of force."
 {¶ 34} The relevant culpable mental states are explained in R.C. 2901.22 which states:
"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature. R.C. 2901.22(A).
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 35} In arguing this assignment of error, Starcher claims that no reasonable trier of fact could find that these elements were satisfied because there was no physical evidence of an assault, and Rosie and Ms. Dove did not act as one would expect a sexual assault victim to act following the assault. These arguments were also made to the jury, which weighed the evidence and the testimony and arrived at guilty verdicts regardless.
 {¶ 36} Upon review of the entire record, the weight of the evidence, all reasonable inferences, and the credibility of the witnesses, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellant's fifth assignment of error is overruled.
 III. {¶ 37} Starcher's three assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
Slaby, P.J. and Carr, J., concur.